**Bennie BLACKBURN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 2, 1961.

Rehearing Denied Oct. 6, 1961.

Burnis Martin, W. W. Burchett, Prestonsburg, for appellant.

John B. Breckinridge, Atty. Gen., Troy D. Savage, Asst. Atty. Gen., for appellee.

STEWART, Judge.

Bennie Blackburn, indicted for the murder of Bill Buck Baker, was found guilty of voluntary manslaughter and sentenced to serve 21 years in the penitentiary.

He appeals from the judgment entered, urging these grounds for reversal: (a) His motion for a directed verdict should have been sustained because it is claimed the evidence was not sufficient to take the case to the jury; and (b) the lower court erred prejudicially when it failed to give an instruction covering self defense.

The record discloses appellant, Blackburn, on the day of the killing had been driving around the countryside since early afternoon with one Denvil Joseph. They had stopped at taverns where both drank a considerable amount of beer and some whiskey. During their travels appellant had made a special trip to his home to pick up a .38 revolver; and this he first placed in the glove compartment of the car but later transferred to one of his pockets. They returned to appellant's home in the early part of the night and Joseph, who was in a drunken condition by this time, lay down on the front seat of the car, and appellant walked toward a small concrete-block house, which was used as the sleeping quarters of his family. The remaining portion of his habitation was a kitchen located in a trailer parked adjacent to his block house. Appellant at this time resided approximately three miles south of Prestonsburg.

Appellant testified that shortly after he entered the block house his wife went to the trailer for a bottle of milk for the baby. Then he heard in a few moments what he thought was a "lot of backfiring." His wife soon returned and said: "I think I have shot Bill Buck." Appellant said he took Baker to the hospital and not long after he reached this place Baker was pronounced dead.

Appellant also stated that he had a .38 revolver on his person when he left his car. However, at the time he was interrogated by the county judge of Floyd County on the night of the homicide, he stated he had lost

his revolver in a poker game. It was brought out that he also owned a .22 "target" pistol and a shotgun. We gather from the record that appellant was a bootlegger and Baker, whose home was down the road a short distance, waited on the trade for appellant at night.

Denvil Joseph, who was called as a witness for the Commonwealth, was admittedly stupefied from the effects of alcohol on the occasion of the killing. He testified that when appellant left the car he " * * * might have gone in the trailer and so I laid down and it wasn't but just a little bit until * * * I heard something crack twice * * *. I would say it wasn't over, maybe, two or three minutes, or, maybe, two or three seconds. It wasn't long. I wasn't asleep, I was almost asleep because if it had been long I would have been asleep."

Continuing his version of the incident, Joseph stated that appellant returned to the car and informed him Baker had been shot. This witness then got out of the car and approached the trailer. He said he next saw appellant's wife in the trailer beside Baker, holding his right arm and helping him toward the door. According to Joseph's testimony, appellant some time later gave these instructions to him: "Go out there and lay down in it (in one of the cars) and don't let nobody see you."

Appellant's wife, Edna, testified that upon the arrival of her husband back home she immediately left him in the block house and went to the trailer for milk for their baby. She stated that she took with her a .38 caliber revolver that she claimed she always carried for protection, and that this weapon was identical in all respects with her husband's. She said Baker was in the trailer when she got there; she "had some difficulty" with him; she shot him twice; and she then went back to her husband and told him what she had done. Her testimony did not develop the nature of her difficulty with Buck.

It was shown that appellant's wife, on the night of shooting, told the coroner, the coun-

ty attorney and the county judge of Floyd County that she was asleep at the time Baker was shot. When confronted at the trial with this admission upon her part, she retorted that she had lied to these officials because (and we quote her words): "I was shocked and tore up and scared."

The bullet in Baker's body ranged from front to back and down about four inches, which could indicate that he had been in a stooped position at the time he was shot. Ballistics experts were unable to determine whether the bullets were fired from appellant's gun, his wife's, or from some other weapon. There is no evidence of motive on the part of appellant, nor was it established that he was in the trailer when the shooting occurred.

■ As is apparent from the foregoing recital of the facts of this case, appellant's conviction rests upon circumstantial evidence. Appellant contends the Commonwealth failed to prove to any extent whatsoever that he slew Buck. We believe the evidence upholds his conviction with sufficient certainty.

In Mullins v. Commonwealth, 196 Ky. 687, 245 S.W. 285, 286, it is stated: "The rule that a conviction in a criminal case may be had upon circumstantial evidence alone is subject to the qualification that, if the evidence be as consistent with defendant's innocence as with his guilt, it is insufficient to support the conviction."

Baker was shot within a short interim of time after appellant left his car. Appellant was then armed; in fact, he testified he had returned to his home for the sole purpose of securing his revolver, and he seemed to have wanted it for a very special reason. He was the first to announce to Joseph that Baker was shot, and he offered no explanation as to who had perpetrated the deed. To sum up, we have a man with a deadly weapon at the scene of the homicide when the act occurred.

The action of appellant's wife immediately after Baker was shot, namely, her render-

ing such assistance as she could to him, belies the statement she gave at the trial that she had shot him a few minutes previously because of some difficulty she had had with him. It will be recalled appellant's wife told the three county officials, above mentioned, that she was asleep when Baker was shot. She changed this statement at the trial, and the jury could well believe she was not telling the truth when she took the blame for the crime.

A consideration of the evidence of this case, together with the reasonable deductions that may be drawn therefrom, convinces us the jury was justified in finding appellant guilty of the offense of killing Baker.

■ The next contention of appellant is that an instruction covering self defense should have been given. We have adopted the rule that where the evidence is wholly circumstantial in a case like the one before us, if there is no evidence of a struggle or if the facts do not reveal the manner in which the deceased met death, such an instruction should not be given. See Brown v. Commonwealth, Ky., 275 S.W.2d 928, and Hasty v. Commonwealth, Ky., 272 S.W.2d 325. There is no evidence that even remotely suggests that a struggle ensued at the place of the crime. Furthermore, appellant did not contend in circuit court that he shot Baker in self defense. His argument throughout, below as well as here, has been that he did not commit the offense but that his wife did. It follows that the lower court rightly refused to give an instruction embracing self defense.

■ A final complaint is that the perpetration of the offense was not proven to have happened "before the finding of the indictment." This ground seems to have been raised as an afterthought, because it is not seriously argued and is only mentioned but not discussed. Still, it is true the evidence is somewhat meager in pinpointing when the killing took place. However, Chester D. Potter, a detective of the Kentucky State Police, testified he was called to investigate

the shooting of Baker and he went to the scene of the crime on November 4th, which was the date of its occurrence. His work covered two days. At one place in his testimony he stated he got a revolver from appellant on November 6th, and the Commonwealth's attorney then asked in this connection: "That was some two days after the shooting?" His reply was in the affirmative.

We believe the general tenor of Potter's testimony clears up this point beyond controversy.

Wherefore, the judgment is affirmed.